In the Matter of ROBERT GINSBURG, Doing Business as WALGROVE FARMS, Petitioner, against DANIEL J. CAREY, as Commissioner of Agriculture and Markets of the State of New York, Respondent.— Proceeding under article 78 of the Civil Practice Act, transferred to this court by an order of the Supreme Court at Special Term, entered in Albany County, to review and annul such part of a determination of respondent Commissioner of Agriculture and Markets as denied petitioner's application for an extension of his milk dealer's license to the town of Hamptonburg in Orange County. Petitioner's license authorized him to sell milk at wholesale and retail in the village of Washingtonville and the town of Blooming Grove. His application for an extension to other areas was granted as to the town and village of Monroe and denied as to the town of Hamptonburg, such denial being upon the commissioner's decision that the granting of the extension sought would tend to destructive competition in a market already adequately served and would not be in the public interest. (Agriculture and Markets Law, § 258-c.) The town of Hamptonburg is a rural farming community, containing no village, and the last reported population being but 1,272. One dealer is licensed to sell in the town at wholesale and retail. He has been in business 27 years. His route covers about 35 miles, over which he operates his truck at less than 50% of capacity, while selling daily approximately 79 quarts at retail. Respondent urges, logically enough, that a reduction in retail sales by as little as 40 quarts per day would greatly increase the cost of distribution. The present dealer sells wholesale an average of 212 quarts daily to two of the three stores which retail milk, one of these two stores also selling petitioner's milk, purchased at his farm. The present dealer's sales increase by from 10% to 15% in July and

August. It is argued, and might reasonably be assumed, that the number of potential customers in this farming community is reduced by a number of families who consume milk produced on their farms, but in the absence of proof this assumption will not be indulged. An inspector employed by the Department of Agriculture and Markets testified that he sampled consumer opinion and demand by interviewing persons throughout the town and found a demand for petitioner's milk by one person interviewed. With this exception, the other persons questioned were satisfied with the quality of the milk purchased by them and with the service rendered. Those who purchased from stores and from farms rather than from the retail dealer said that they did so from choice. Petitioner produced two persons who customarily purchased milk at his farm and who said they would welcome retail delivery. His principal contention, however, is that his "Jersey Creamline" milk, with a high butterfat content (5.6% to 5.7% as against 4.6% for the Guernsey-Jersey "hi-fat" milk which, among other kinds, is sold by the local dealer) is a superior milk which should be made available, by delivery at retail, to consumers who prefer milk of that type, with which the present dealer cannot, according to petitioner's argument, supply them. As has been noted, however, no substantial demand of that nature has been shown and of some significance is the present dealer's testimony that demand is almost nonexistent, among his customers, for the milk of high butterfat content which he offers for sale, in addition to regular Grade A milk and homogenized Grade A milk, although the high butterfat milk is locally advertised by its producer. As indicating the absence of a demand for petitioner's product, respondent points to testimony that in the store supplied both by petitioner and the local dealer, petitioner's high butterfat milk is displayed in the same showcase as the local dealer's Grade A homogenized milk but is sold at the same price. On the record before us the commissioner's determination is sustained by the fair preponderance of the evidence. This conclusion renders unnecessary a consideration of certain evidence relating to unlawful sales of petitioner's milk and to erroneous statements appearing upon its container labels. Determination unanimously confirmed, with $50 costs. Present — Foster, P. J., Bergan, Halpern, Zeller and Gibson, JJ.